UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

Nicole Davis,

        Petitioner,

v.

Nicole English
Warden, FCI-Waseca

        Respondent.

Civil No. 12-1483 (JNE/LIB)

**REPORT AND RECOMMENDATION**

---

This matter is before the undersigned United States Magistrate Judge on Petitioner's application for habeas corpus relief under 28 U.S.C. § 2241. The case has been referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, it is recommended that this action be summarily dismissed pursuant to Rule 4 of The Rules Governing Section 2254 Cases In The United States District Courts.[1]

I.    **BACKGROUND**

   **A. Petitioner's Arrest, Conviction, and Incarceration**

Nicole Davis (Petitioner) is a prisoner at the Federal Correctional Institution in Waseca, Minnesota (FCI Waseca), where Nicole English (Defendant) is the Warden. (Decl. Groteboer [Docket No. 9], at ¶ 3). Petitioner was arrested in 1999 and charged with Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. § 846. (Decl.

---

[1] Rule 4 provides that "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."

Groteboer [Docket No. 9], at ¶ 3; Decl. Groteboer, Attach. A [Docket No. 9-1], at 5).

Petitioner was convicted and now is serving a 168-month sentence of imprisonment. (Id. at

3).[2] She has a projected release date of October 4, 2014, via Good Conduct Time release.

(Id. at 4).

On January 20, 2009, Petitioner was assigned to FCI Waseca. (Decl. Kline [Docket

No. 8], at ¶ 3). Shortly thereafter, psychologist Dr. Amy A. Boncher (Dr. Boncher)

performed a psychology transfer intake which included a review of various Bureau of Prisons

(BOP) records and an in-person interview. (Decl. Kline, Attach. A [Docket No. 8-1]). In her

interview, Petitioner expressed an interest in the Residential Drug Abuse Program (RDAP).

(Id.). Petitioner described amphetamine as her drug of choice before her arrest, and also

reported infrequent use of alcohol, but stated that she had not undergone any previous drug

treatment. (Id.). Petitioner was advised that she could apply for the RDAP when she was

within forty-eight (48) months of her release date.

**B. Petitioner's Application for RDAP**

Petitioner requested an interview for the RDAP on February 4, 2011. (Decl. Kline,

Attach. B [Docket No. 8-2]). Subsequently, drug treatment specialist Tracey M. Curry (DTS

Curry) completed a qualification screening in which she noted (1) that Petitioner's

Presentence Investigation Report indicated methamphetamine use, (2) that Petitioner had

tested positive for methamphetamine in June 2001 while on pretrial release, and (3) that

Petitioner had reported cocaine use when she was twenty (20) years old. (Decl. Kline, Attach.

C [Docket No. 8-3], at 1). DTS Curry determined that Petitioner met the criteria to proceed to

---

[2] Petitioner originally was sentenced to 262 months imprisonment, followed by five (5) years of supervised release. Id. That sentence subsequently was reduced to 168 months imprisonment, pursuant to United States v. Booker, 543 U.S. 220 (2005) (sentencing can be based only on those facts admitted by defendant or proved beyond a reasonable doubt at trial).

an interview with the Drug Abuse Program Coordinator (DAPC), Melissa J. Klein, Ph.D. (Dr. Klein). (Decl. Kline, Attach. C [Docket No. 8-3]).

Upon reviewing Petitioner's records and the notes of DTS Curry, Dr. Klein determined that Petitioner did not qualify to proceed to a DAPC interview. (Decl. Kline, Attach. D [Docket No. 8-4]). In particular, Dr. Kline noted that Petitioner's "substance use history is minimal, . . . and available documentation does not establish a pattern of substance abuse or dependence during the 12 months prior to her arrest." (Id.). Dr. Klein reported that Petitioner's various intake reports were inconsistent concerning substance abuse. (Id.). In particular:

- During her first intake interview in 2002, Petitioner reported no history of substance abuse, and reported no interest in participating in any treatment programs. (Decl. Kline, Attach. E (Docket No. 8-5), at 7).

- In 2005, Petitioner volunteered to participate in drug education and expressed an interest in non-residential drug treatment. (Id. at 6).[3]

- During her March 20, 2006, intake interview at the Federal Correctional Institution in Danbury, Connecticut (FCI Danbury), Petitioner reported no history of substance abuse, and no interest in participating in any treatment programs. (Id. at 4).

- During her May 2, 2006, intake interview at the Federal Correctional Institution in Pekin, Illinois, Petitioner reported a history of alcohol abuse, and said that she was interested in drug abuse treatment. (Id. at 3).

---

[3] The record before the Court does not indicate whether Petitioner ever completed the drug education course, or applied for non-residential drug treatment.

3

- During her September 18, 2007, intake interview at FCI Danbury, Petitioner reported a history of alcohol abuse, but stated that she had no interest in participating in drug base treatment programs. (Id. at 1).
- During her January 29, 2009, intake interview at FCI Waseca, Petitioner reported a history of amphetamine use, described symptoms consistent with dependence, and inquired about the RDAP. (Decl. Klein, Attach. A [Docket No. 8-1]).

Dr. Kline noted that Petitioner's reported cocaine use occurred some nine (9) years before her arrest, and that, aside from Petitioner's self-reporting, the only indication that Petitioner had used amphetamines was a urine sample reported in her Presentence Report as testing "presumptively positive" for amphetamines. (Decl. Kline, Attach. D [Docket No. 8-4]). In conclusion, Dr. Klein wrote: "[Petitioner] was determined unqualified for the RDAP due to the lack of available documentation establishing use and a pattern of abuse or dependence on alcohol or drugs." (Id.).

Subsequently, Petitioner was notified that she did not qualify for the RDAP because "documentation does not verify [Petitioner] used, or established a pattern of abuse or dependence on, alcohol or other drugs in the year prior to [Petitioner's] arrest for the instant offense." (Decl. Kline, Attach. F [Docket No. 8-6], at 1). Petitioner was advised that, should she wish to pursue drug treatment, she could either volunteer for non-residential treatment, or provide FCI Waseca's drug abuse treatment staff with documentation of her prior substance abuse. (Id. at 2).

### C. Petitioner's Administrative Appeals

Petitioner filed a Request for Administrative Remedy on January 6, 2012, in which she stated that she believed her Presentence Report (PSR) contained evidence sufficient to show

that she qualified for the RDAP. (Pet'r's Exs. [Docket No. 1-3], at 6). In particular, Petitioner cited Page 25 of the PSR, in which she reported crack cocaine use in 1989 and 1990, and a June 20, 2001, urine sample that tested presumptively positive for amphetamines. (Id. at 6, 14).

Subsequently, the FCI Waseca drug treatment staff reconsidered whether Petitioner was qualified to participate in the RDAP. (Decl. Kline, Ex. H [Docket No. 8-8]). Dr. Klein, also citing Page 25 of the PSR, stated that Petitioner did not qualify, because (1) Petitioner reported that she stopped using crack cocaine in 1990, (2) Petitioner reported that she consumed alcohol only on special occasions, and (3) Petitioner did not report a drug or alcohol problem or prior drug treatment. (Id.). In the Administrative Remedy Response, Defendant wrote that neither Petitioner's PSR nor any other documentation established that Petitioner had a substance abuse problem during the twelve (12) months preceding her arrest in 1999, and thus did not qualify for participation in the RDAP. (Decl. Kline, Ex. G [Docket No. 8-7], at 3-4). Defendant advised Petitioner of her right to an administrative appeal to the BOP North Central Regional Director (Regional Director). (Id. at 4).

Petitioner made her administrative appeal to the Regional Director on February 3, 2012. (Pet'r's Exs. [Docket No. 1-3], at 9). In her appeal, Petitioner wrote that she denied having a drug abuse problem in her PSR because she was "ashamed." (Id.). Petitioner again asserted that her PSR, which documented her crack cocaine use in 1989 and 1990 and her positive test for amphetamines in 2001, should be sufficient to show that she had a substance abuse problem. (Id.) However, Petitioner also acknowledged that she could not provide any further documentation. (Id.). The Regional Director denied Petitioner's appeal on February

5

17, and advised Petitioner that she could appeal to the BOP in Washington, D.C. (the "Central Office").

Petitioner filed an appeal to the Central Office on March 7, 2012. (Decl. Groteboer [Docket No. 9], at ¶ 6; Decl. Groteboer, Attach. B [Docket No. 9-2], at 7). Although a response to her appeal was due May 6, 2012, Petitioner received no such response. (Pet'r's Addendum [Docket No. 1-2]; Decl. Groteboer [Docket No. 9], at ¶ 6). Thus, Petitioner's appeal is deemed denied. 28 C.F.R. § 542.18.

## II. RDAP STATUTE AND REGULATIONS

The BOP is required, "subject to the availability of appropriations," to "provide residential substance abuse treatment," 18 U.S.C. § 3621(e)(1). While this requirement was initially phased in, BOP is now required (again, subject to available funding) to provide such treatment "for all eligible prisoners." 18 U.S.C. § 3621(e)(1)(C). The statute defines an "eligible prisoner" as "a prisoner who is (i) determined by the Bureau of Prisons to have a substance abuse problem; and (ii) willing to participate in a residential substance abuse treatment program." 18 U.S.C. § 3621(e)(5)(B). The statute does not define "substance abuse problem." However, by its plain language, the statute "delegates to the BOP the authority and discretion to determine who has such a problem." Stanciel v. Holinka, Civ. No. 06-3730 (PJS/SRN), 2008 WL 204889, at *2 (D. Minn. Jan. 31, 2008) (Nelson, M.J.) (adopted at same cite by Schiltz, J.). In particular, then-Magistrate Judge Nelson noted that the question of whether a prisoner has a substance abuse problem—and, thus, whether a prisoner is "eligible"—is "*determined by* the [BOP]." Id. (emphasis and alteration in original).

Congress also created an incentive for prisoners to participate in, and complete, such

6

programs by allowing BOP to reduce the term of imprisonment by up to one year for a nonviolent offender who completes the RDAP. 18 U.S.C. § 3621(e)(2)(B); Laws v. Barron, 348 F. Supp. 2d 795, 800 (E.D. Ky. 2004) ("Congress amended the statute to encourage prisoner participation and completion . . . [by] provid[ing] prisoners convicted of nonviolent offenses with the incentive of early release upon their completion of a RDAP."). "As several courts have noted, the RDAP has proved popular with prisoners" because of the opportunity it provides to reduce their time in prison. Stanciel, 2008 WL 204889, at *2.[4]

In response to that demand, and pursuant to its delegated authority, the BOP has promulgated regulations governing the RDAP, including regulations that govern eligibility:

> (b) *Admission criteria*. Inmates must meet *all* of the following criteria to be admitted to the RDAP.
> (1) Inmates must have a *verifiable substance abuse disorder*.
> (2) Inmates must sign an agreement acknowledging program responsibility.
> (3) When beginning the program, the inmate must be able to complete all three components described in paragraph (a) of this section.

28 C.F.R. 550.53(b) (emphasis added). Neither the statute nor the regulation defines "verifiable substance abuse disorder." However, BOP's Program Statement on Psychology Treatment Programs states that, at the screening phase, prison staff shall "review an inmate's Central File and other collateral sources of documentation to determine if . . . [t]here is *documentation* available to verify the inmate's use of specific drugs, including alcohol." BOP Program Statement 5330.11, Psychology Treatment Programs, § 2.5.8 (Mar. 16, 2009)

---

[4] See also Close v. Thomas, 653 F.3d 970, 972 (9th Cir. 2011) ("demand for RDAP far exceeds its availability); Dellarcirprete v. Gutierrez, 479 F. Supp. 2d 600, 602 (N.D.W.V. 2007) (describing "a flood of applications for the program"); Laws, 348 F. Supp. 2d at 800 ("Droves of prisoners who were convicted of non-violent offenses . . . have applied to be accepted into qualifying programs such as the RDAP so as to be eligible for early release."); Schlager v. Stewart, 2012 U.S. Dist. LEXIS 21684, at *12 (N.D.W.V. Jan. 31, 2012) (noting "high demand" for the RDAP); Kiyota v. Thomas, 2010 U.S. Dist. LEXIS 131514, at *2 (D. Ore. Dec. 9, 2010) (noting that a wait list is required "to manage the demand for RDAP"); Wells v. Rivera, 2007 U.S. Dist. LEXIS 102315, at *20 (N.D. Fla. Sept. 27, 2007) (quoting Laws); Goren v. Apker, 2006 U.S. Dist. LEXIS 22110, at *7 (S.D.N.Y. April 20, 2006) ("Participation and completion of RDAP is often highly desirable for eligible inmates because it may reduce the period that a prisoner remains in custody by up to one year.").

(Program Statement 5330.11), <u>available at</u> http://www.bop.gov/policy/progstat/5330_011.pdf. The Program Statement provides that documentation may come from a probation or parole officer, social service professional, medical provider, substance abuse treatment provider, or other source, so long as it documents the inmate's substance abuse disorder "within the 12-month period before the inmate's arrest on his or her current offense." <u>Id.</u> The Program Statement further provides that mere "[r]ecreational, social, or occasional" use of alcohol or drugs may not be sufficient to qualify as a "substance abuse disorder," and that verifying documentation "must indicate problematic use; i.e., consistent with the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Health Disorders (DSM) criteria." <u>Id.</u> Where there is no verifying documentation in the inmate's PSR or elsewhere in the inmate's records, prison staff are to advise the inmate that they may volunteer for non-residential treatment programs, or seek documentation that meets the requirements outlined above. <u>Id.</u>

### III. DISCUSSION

As a threshold matter, the Court finds that the record demonstrates that Petitioner has exhausted her administrative remedies, a finding that Defendant does not challenge. (Def.'s Resp. [Docket No. 7], at 7; Decl. Groteboer [Docket No. 9], at ¶ 6; Decl. Groteboer, Attach. B [Docket No. 9-2]).

Petitioner, proceeding *pro se*, alleges that FCI Waseca staff failed to follow federal statutes and BOP regulations in determining that she did not qualify for the RDAP. (Pet. [Docket No. 1-1], at 3). Petitioner states that federal regulations require that, in order to be eligible for the RDAP, an inmate "must have a verifiable substance abuse disorder." (Am.

Pet. [Docket No. 1], at 5).[5] Petitioner further asserts that the record documents her drug use at the time her daughter was born (presumably, her crack cocaine use in 1989 and 1990), and at the time she was incarcerated (presumably, the urine sample that tested positive for amphetamines in 2001). (Id.). Petitioner argues that that these instances of drug use meet the requirement that she demonstrate "verifiable" substance abuse, "regardless of what she may have reported at any interview." (Id.). For relief, Petitioner seeks "an order directing Warden English . . . to transfer Petitioner" to the RDAP "as soon as practicable." Construing her petition liberally,[6] the Court understands Petitioner to be arguing that the ineligibility determination violates the Due Process Clause. Accord Lopez v Fisher, Civ. No. 10-3928 (PJS/SER), 2011 U.S. Dist. LEXIS 87081, at *10 (D. Minn. July 18, 2011) (Rau, M.J.) (construing as a due process claim petitioner's argument that BOP should not have reconsidered his eligibility for RDAP and early release).

Petitioner, in addition to citing 28 U.S.C. § 2241, also argues that Defendant's decision to deny Petitioner enrollment in the RDAP was "arbitrary and capricious," in violation of the Administrative Procedure Act, 5 U.S.C. § 702. (Am. Pet. [Docket No. 1], at 3, 5).

### A. Petitioner's Due Process Claim

#### 1. Standard of Review

Petitioner seeks relief under 28 U.S.C. § 2241, which states, "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . [she] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Where

---

[5] Although Petitioner correctly quotes the regulation, she incorrectly cites to 28 C.F.R. § 550.51(b)(1). The correct citation is 28 C.F.R. §550.53(b)(1).
[6] "[A]s a general rule a *pro se* habeas petition must be given a liberal construction." Frey v. Schuetzle, 78 F.3d 359, 361 (8th Cir. 1996).

9

petitioner seeks a writ of habeas corpus and fails to attack the validity of his sentence or the length of his . . . custody, the district court lacks the power or subject matter jurisdiction to issue a writ." Kruger v. Erickson, 77 F.3d 1071, 1073 (8th Cir. 1996); Rios v. Fisher, Civ. No. 10-4020 (PJS/TNL), 2012 U.S. Dist. LEXIS 96676, at *5-6 (D. Minn. June 19, 2012) (Leung, M.J.) (quoting Kruger).

Here, Petitioner's claim fails because she has not identified a liberty interest cognizable under the Due Process Clause. A "liberty interest" is freedom from restrictions that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandlin v. Conner, 515 U.S. 472, 484 (1995). "In order to prove that such an interest is being deprived, [Petitioner] must show that the deprivation '**inevitably** affect[s] the duration of [her] sentence.'" Hernandez v. Lindeman, Civ. No. 00-1165 (JRT/FLN), 2002 U.S. Dist. LEXIS 18676, at *9-10 (D. Minn. Sept. 24, 2002) (Tunheim, J.) (adding emphasis, quoting Moorman v. Thalacker, 83 F.3d 970, 973 (8th Cir. 1996)). The statute, however, contains no such "inevitable" sentence reduction, but merely states that the BOP "may" reduce the custody of a prisoner who successfully completes the RDAP. 18 U.S.C. § 3621(e)(2)(B); see also Lopez v. Davis, 531 U.S. 230, 241 (2001) ("When an eligible prisoner successfully completes drug treatment, the Bureau has the authority, *but not the duty*, . . . to reduce his term of imprisonment" (emphasis added)); Lopez, 2011 U.S. Dist. LEXIS 87081, at *18-19 ("Numerous courts have rejected the argument that promised eligibility for RDAP early release creates a liberty interest for purposes of the Due Process clause. Neither the Constitution nor [18 U.S.C.] § 3621(e)(2)(B) create a liberty interest in receiving early release upon completion of a RDAP") (collected cases).

This distinction is particularly relevant in the present case, where Petitioner merely

10

seeks *admission* to the RDAP. "Under federal habeas corpus law, the sole remedy that is available is the immediate or expedited release of a prisoner unconstitutionally convicted or sentenced." Giannini v. Federal Bureau of Prisons, 09-1166 (JSM/JMR), 2010 U.S. Dist. LEXIS 35319, at *29 (D. Minn. Feb. 12, 2010) (Mayeron, M.J.) [hereinafter, Giannini I], adopted by 2010 U.S. Dist. LEXIS 35254 (D. Minn. Apr. 8, 2010) (Rosenbaum, J.), aff'd 405 Fed. Appx. 96 (8th Cir. 2010) (unpublished) [hereinafter Giannini II]. "[T]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Egan v. Hawk, 983 F. Supp. 858, 864 (D. Minn. 1997) (Tunheim, J.) (quoting Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979)).

Construing her petition liberally, the Court understands Petitioner to argue that, if admitted to the RDAP, she would complete the program and thereby earn time off of her incarceration pursuant to 18 U.S.C. § 3621(e)(2)(B). However, such an argument "is entirely speculative at this point. The Court does not know if Petitioner will complete the RDAP, or if [she] does, that [she] will be awarded a sentence reduction, and if so, how much of a reduction [she] will receive." Giannini I, 2010 U.S. Dist. LEXIS 35319, at *32. Even if Petitioner had *completed* the RDAP, she would not have a liberty interest in early release. Giannini II, 405 Fed. Appx. at 97 ("neither the Due Process Clause nor 18 U.S.C. § 3621(e)(2)(B) creates a liberty interest in receiving a sentence reduction upon completion of a Bureau of Prisons residential drug abuse program"); see also Lopez, 2011 U.S. Dist. LEXIS 87081, at *20 ("Even in situations in which an inmate completes the RDAP, courts have held that denial of early release does not implicate a liberty interest protected under the due process clause") (collected cases).

Consequently, because Petitioner possesses no liberty interest in admission to the

RDAP, this Court lacks subject matter jurisdiction and her petition should be DISMISSED.[7]

### B. Petitioner's Administrative Procedure Act Claim

Petitioner argues that "[a]ccording to the APA, the Court must set aside an agency action that is arbitrary and capricious and has exhibited an abuse of discretion by not allowing Petitioner Davis to participate in the RDAP rehabilitation program." (Am. Pet. [Docket No. 1], at 5).

However, BOP's determinations regarding the RDAP are not subject to review under the APA. 18 U.S.C. § 3625 ("The provisions of [the APA] do not apply to the making of any determination, decision, or order under this subchapter [18 U.S.C. §§ 3621 et seq.].").

---

[7] Even if Petitioner had asserted a liberty interest, Defendant properly determined that Petitioner is not eligible for the RDAP. Petitioner argues that the information contained in her PSR—in particular, her positive drug test in 2001 and her self-reported crack cocaine use in 1989 and 1990—demonstrates that she has a "verifiable substance abuse disorder," and thus is eligible to participate in the RDAP. (Am. Pet. [Docket No. 1], at 5). Although Petitioner's PSR demonstrates a history of drug *use*, it does not demonstrate that she has a verifiable substance abuse disorder. Petitioner's PSR states that from 1989 to 1990, she "reported that she smoked an undisclosed amount of 'crack' cocaine once weekly;" that she "began drinking alcohol at the age of 16, consuming a glass of [P]ink [C]hampale once monthly" and that "prior to her arrest, she would consume an alcoholic beverage only during special occasions;" and that she "submitted a urine sample for drug analysis on June 20, 2001, . . . which tested presumptively positive for the presence of amphetamines." (Pet'r's Exs. [Docket No. 1-3], at 14). However, her PSR also states that Petitioner "discontinued her drug usage" in 1990 upon learning that she was pregnant, and that she "[did] not report having a substance and/or alcohol problem." Id.

  It cannot be said, on the basis of the present record, that Defendant erred in denying Petitioner's eligibility for the RDAP. Such occasional use, the most serious of which occurred nine to ten years before Petitioner's arrest, is not per se sufficient to qualify as "problematic use." See Program Statement 5330.11, § 2.5.8. This District was presented with a similar situation in Stanciel v. Holinka, Civ. No. 06-3730 (PJS/SRN), 2008 WL 304889 (D. Minn. Jan. 31, 2008), in which the petitioner likewise claimed that the BOP had improperly rejected his RDAP application. Id. at *1 (Nelson, M.J.). The petitioner's PSR and intake interviews indicated that he did not use illegal drugs, drank only "sparingly," and did not report a history of substance abuse. Id. Petitioner later sought admission to the RDAP by submitting "certificates from the BOP's self-help treatment programs" in which he admitted to alcohol and drug abuse, and affidavits from family and friends regarding his alleged alcohol and drug abuse. Id. at *3-4 (internal quotations omitted). The Court, noting the "attractiveness of [the] possibility of early release after successfully completing the RDAP," held that the BOP rightly concluded that such self-serving evidence was insufficient to overcome the objective evidence to the contrary in the petitioner's prison record. Id. at 4.

  In the present case, Petitioner similarly argues that the BOP erred by refusing to disregard her repeated earlier, more objective denials of any substance abuse problem and should instead—despite the lack of any independent verification—credit her more recent admissions that she has a substance abuse problem. The Court finds there was no error in BOP's determination that Petitioner's drug and alcohol use did not rise to the level of a "pattern of substance abuse or dependence" necessary for admission to the RDAP.

Although 18 U.S.C. § 3625 "does not preclude judicial review of BOP *rulemaking* . . . [it] may well preclude judicial review of BOP decisions *applying the final rule and Program Statement to particular inmates*." Gatewood v. Outlaw, 560 F.3d 843, 846 n.2 (8th Cir. 2009) (citing Lopez, 531 U.S. at 240; Martin v. Gerlinski, 133 F.3d 1076, 1079 (8th Cir. 1998)).[8] Thus, "[t]o find that prisoners can bring habeas petitions under 28 U.S.C. § 2241 to challenge the BOP's discretionary determinations made pursuant to 18 U.S.C. § 3621 would be inconsistent with the language of 18 U.S.C. § 3625." Reeb v. Thomas, 636 F.3d 1224, 1227 (9th Cir. 2011).

Consequently, because 18 U.S.C. § 3625 bars judicial review of Defendant's implementation of the RDAP, Petitioner's APA claim should also be DISMISSED.

## III. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Petition for habeas corpus relief under 28 U.S.C. § 2241, [Docket No. 1], be **DENIED**; and

2. This action be summarily **DISMISSED WITH PREJUDICE**.

Dated: February 27, 2013            s/Leo I. Brisbois
                                    Leo I. Brisbois
                                    U.S. Magistrate Judge

---

[8] See also Egan, 983 F. Supp. at 861 ("It is true that Congress exempted BOP decisions carrying out § 3621(e)(2)(B) from judicial review under the APA) (citing 18 U.S.C. § 3625); Fisher v. English, Civ. No. 10-4390 (RHK/JSM), 2011 U.S. Dist. LEXIS 85181, at *13-14 (D. Minn. June 14, 2011) (Mayeron, M.J.) (quoting Gatewood).

13

# N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by March 14, 2013**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.